UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SMARTER TODDLER GROUP, LLC, | Case No. 19-13097 |
| Debtor. | |

## DECLARATION OF KETTIA MING

Kettia Ming hereby declares:

1. I am a Member of and the Manager of Smarter Toddler Group, LLC ("Debtor") and submit this Declaration pursuant to Local Bankruptcy Rule 1007-2.

## NATURE OF THE BUSINESS

2. My husband Robert Ming and I have owned and operated nursery and pre-school day care centers under the "Smarter Toddler" name since 2003. Our first two centers were located at 100A West 89th Street and 406 West 55th Street in Manhattan.

3. Pursuant to an Asset Purchase Agreement, dated November 3, 2014, between Bright Horizons Children's Centers LLC ("Bright Horizons"), as purchaser, and Robert, myself, and two companies through which we owned those two centers, as sellers (the "APA"), we sold those centers for approximately $6.7 million, net of post-closing adjustments.

4. We devoted the vast majority of net sale proceeds, after taxes and repayments to prior lenders, to opening two new centers, one located at 34 North 7th Street in Williamsburg, Brooklyn, and the other located at 99 John Street in Manhattan, both of which are owned by the Debtor and which have greater capacity than the centers sold in 2014.

## CIRCUMSTANCES LEADING TO THE FILING

5. Prior to our opening the John Street center, Bright Horizons commenced an action in New York County Supreme Court (Index No. 153799/2016) asserting we violated a restrictive

covenant in the APA by opening the center too close to the Bright Horizons center located at 20 Pine Street.

6. The litigation was extremely disruptive, as our former counsel stipulated to our not opening the John Street center while the litigation was pending even though we were incurring rental obligations with respect to the same.

7. The litigation was resolved pursuant to a Settlement Agreement, dated September 6, 2016, pursuant to which the Debtor agreed to make installment payments to Bright Horizons totaling $1.5 million, of which $500,000 remains outstanding, half of which is due December 31, 2019 and half of which is due December 31, 2020.

8. Pursuant to the Settlement Agreement, the Debtor granted Bright Horizon a blanket security interest in substantially all its assets. Robert and I also guaranteed the Debtor's payment obligations under the Settlement Agreement.

9. In 2017, the Debtor's first full year of operations, the Debtor generated gross revenues of $2.84 million. In 2018, the Debtor achieved gross revenues of $3.99 million. The Debtor is on track to achieve similar results this year, having grossed $2.79 million year to date.

10. The centers are operationally solvent. The Debtor reported ordinary business income of $324,748 in 2018 on its Federal tax return for 2018, which was $632,146 greater than the amount reported for 2017.

11. However, achieving operational solvency did not come easy. We went into debt to build and support the business and pay Bright Horizons, and several of our creditors have obtained judgments against us.

12. We commenced these bankruptcy cases to stay collection activity against the Debtor, and give the Debtor breathing space to market and sell the centers as a going concern and pay outstanding debts with the proceeds.

13. We believe the centers have the potential to be very profitable. Current enrollment is 112 children across both centers, which is roughly half total capacity. Increasing enrollment would enable us to spread fixed costs (most significantly, rent of approximately $130,000/month) over more children, and permit us to achieve additional economies as well.

**LOCAL BANKRUPTCY RULE 1007-2 DISCLOSURES**

14. Pursuant to Local Bankruptcy Rule 1007-2(a), I hereby make the following disclosures:

Names and addresses of the members of any committee organized prior to the order for relief: N/A.

Information with respect to the holders of the twenty largest unsecured claims, excluding insiders: as set forth in the list of the Debtor's 20 largest unsecured creditors annexed to the petition.

Information with respect to the holders of the five largest secured claims: The Debtor has two secured creditors: Bright Horizons, pursuant to the Settlement Agreement, and B.E. Capital Management Fund LP ("B.E. Capital"), pursuant to a Secured Promissory Note, dated June 30, 2017, under which it loaned the Debtor $200,000.[1] The outstanding balance owed to Bright Horizons under the Settlement Agreement is $500,000. The outstanding balance under the

---

[1] Bright Horizons's address is: 200 Talcott Avenue South, Watertown, Massachusetts 02472. B.E. Capital's address is: 15 East 67th Street, 6th Floor, New York, NY 10065.

B.E. Capital loan, inclusive of default interest which has accrued thereon at the rate of 24%/year, is around $300,000.

Summary of Debtor's assets and liabilities: The Debtor's principal assets are its prepetition bank account (which we will be closing and replacing with DIP accounts pursuant to the Operating Guidelines for Debtors in Possession), real property leases and associated security deposits, tuition deposits, FF&E, and the Debtor's rights to the Smarter Toddler mark. Its liabilities are as set forth herein and in the list of the Debtor's 20 largest unsecured creditors annexed to the petition.

Shares of stock, debentures, or other securities that are publicly held: N/A.

List of all property in the possession or custody of any custodian, officer, pledgee, assignee of rents or secured creditor, or agent for any such entity: N/A.

List of owned or leased premises from which the Debtor operates its business: 17 North 6th Street in Brooklyn and 99 John Street in Manhattan.

Location of the Debtor's substantial assets: 17 North 6th Street in Brooklyn and 99 John Street in Manhattan; and its bank account.

Location of the Debtor's books and records: 17 North 6th Street in Brooklyn; 99 John Street in Manhattan; and Inemer & Wolf LLP, 1430 Broadway, Suite 1503, New York, NY 10018.

Nature, location and value of any assets held outside the territorial limits of the United States: N/A.

Nature and present status of each action or proceeding, pending or threatened, against the debtor or its property where a judgment against the debtor or a seizure of its property may be imminent: Several claims against the Debtor have already been reduced to judgment, as

indicated in the list of the Debtor's 20 largest unsecured creditors.[2] City Marshal Jeffrey Rose, acting on behalf of judgment creditor E.J. York Inc., served a Property Execution with Notice to Garnishee, dated September 5, 2019, commanding the Debtor to turn over all property in its possession. And on September 25, 2019, Marshal Rose served a Notice of Levy and Sale pursuant to which he scheduled a public auction of property located within the Williamsburg center for October 14, 2019.

Names of existing senior management, their tenure, and a brief summary of their relevant responsibilities and experience: Senior management is Robert and myself. Robert is the Marketing and Creative Director, while I handle the day-to-day operations of the centers. My responsibilities include: employing and retaining staff, ensuring their professional development, maintaining the centers in accordance with New York licensure requirements, developing and executing effective and contemporary programming, marketing the centers and managing and growing enrollment, developing and maintaining relationships with parents and families, liaising with regulatory authorities, and developing and maintaining relationships and partnerships within the community.

15. We intend to continue operating both centers during these cases. Pursuant to Local Bankruptcy Rule 1007-2(b), the following is:

Estimated payroll to employees (exclusive of members and officers) for the 30-day period following the commencement of these cases: Approximately $130,000.

---

[2] The actions in which those judgments have been entered are: Fox Capital Group Inc. v. Smarter Toddler Group LLC, No. 161143/2017 (Sup. Ct. N.Y. Co.); Giordano Consulting Inc. v. Smarter Toddler Group, LLC, No. 654157/2018 (Sup. Ct. N.Y. Co.); Abe Shampaner v. Smarter Toddler Group LLC et al., No. 655271/2018 (Sup. Ct. N.Y. Co.); Brett Shampaner v. Smarter Toddler Group LLC et al., No. 655272/2018 (Sup. Ct. N.Y. Co.); and E.J. York Inc. v. Smarter Toddler Group, LLC et al., No. 655780/2017 (Sup. Ct. N.Y. Co.).

Compensation to be paid for services for the 30-day period following the petition date: (a) to Robert and myself (the Debtor has no other officers): $12,500;[3] (b) to other members of the Debtor: $0; and (c) to financial or business consultants: N/A.

Estimated cash receipts, disbursements, net cash gain/loss, and obligations or receivables expected to accrue but remain unpaid (excluding professional fees) in each case for the 30-day period following the commencement of these cases:

Estimated cash receipts (tuition receipts): $295,000
Projected disbursements: $285,000
Net cash gain/loss: $10,000
Obligations or receivables expected to accrue but remain unpaid ex. professional fees: N/A.

---

[3] The Debtor's operating agreement provided for me to receive a salary of $280,000/year and for Robert to receive a salary of $220,000/year. As a practical matter Robert and I have not taken a salary (received a Form W-2) since the opening of the centers but we have instead been drawing from cash flow as available as follows: $153,114 in 2016; $237,547 in 2017; and $168,466 in 2018. Robert and I intend to go on the payroll postpetition and pay ourselves $150,000/year as compensation for our services during the pendency of these cases.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on September 27, 2019.

_____
Kettia Ming, Manager